UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| USA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>DERIC GONZALEZ-RODRIGUEZ,<br><br>　　　　　Defendant. | Case No. 24-cr-00344-SI-1<br><br>**ORDER RE: MOTION TO SUPPRESS EVIDENCE**<br><br>Re: Dkt. No. 32 |

Before the Court is defendant's motion to suppress fruits of an allegedly unlawful seizure and search. Dkt. No. 32. For the reasons stated below, the Court GRANTS defendant's motion.

**BACKGROUND**

At approximately 4:30 a.m. on May 10, 2024, San Francisco Police Department Officers Matthew Bonilla and Iroh Agoncillo were on patrol in a marked police car in the Tenderloin district of San Francisco, an area known for open-air drug dealing. Ex. 136[1] (Officer Bonilla's incident report). Driving eastbound on Market Street, Officer Bonilla testified that he saw a group of individuals congregating a block away, so he turned right and drove one block the wrong way on 7th Street, a one-way street. Ex. 2 (Officer Bonilla's body-worn camera footage) at 00:08-00:17; Dkt. No. 59 ("Hearing Transcript") at 17. At the other end of the block, 7th Street intersected with Stevenson Street, an area where Officer Bonilla and other officers had made narcotics arrests before. Hearing Transcript at 17. Around the corner to the left on Stevenson Street, defendant Deric

---

[1] Exhibit numbers refer to the exhibit log of the Court's evidentiary hearing held on November 15, 2024. *See* Dkt. No. 62.

Gonzalez Rodriguez was standing close to a building with a small group of others around him. *Id.* at 18. Officer Bonilla could not see defendant until he passed the end of the building at the corner of 7th Street and Stevenson Street. *Id.* at 51-52. Officer Bonilla wrote in his police report and testified that, as the patrol car reached Stevenson Street, he saw defendant holding in one hand a clear plastic bag with a white powder substance that he believed to be drugs and, in the other hand, a black plastic bag. *Id.* at 18; Ex. 136. Officer Agoncillo testified that he could not remember much from the night of the incident, but he did not think Officer Bonilla said anything about seeing drugs in the hand of defendant before stopping the car. Hearing Transcript at 92-93. Defendant testified that he was not holding a clear bag with white powder because he was congregating with friends, not customers, and had no reason to be openly holding a bag of drugs. *Id.* at 98-99, 103-104. Defendant further testified that one friend was on the corner and gave them advance notice of the approaching police vehicle, which prompted them to scatter. *Id.* at 102-103.

Officer Bonilla made a quick[2] left turn onto Stevenson Street and stopped the patrol car. Upon exiting the vehicle, Officer Bonilla's body-worn camera ("BWC") shows defendant walking with an opaque black plastic grocery bag in his right hand. Ex. 2 at 00:24-00:26. While at least two other individuals walked away, defendant stopped and Officer Bonilla placed him in handcuffs, at which point defendant did not have anything in his hands. Ex. 2 at 00:26-00:46. Before being handcuffed, defendant placed the black plastic bag on a ledge, where it sat upright. The black bag's handles were touching but not tied together. After Officer Bonilla placed defendant in handcuffs, Officer Bonilla leaned over to look into the black bag without touching it. Ex. 163 (Officer Agoncillo's BWC footage) at 00:02-00:05. Then he took out his flashlight and, with his left hand, separated the handles of the black bag and examined its contents. *Id.* at 00:10-00:13. Inside the black bag were two digital scales and several bags of suspected narcotics.[3] Ex. 136. As this was happening, defendant asked Officer Bonilla to let him go home and the officer responded, "I can't

---

[2] Approximately three or four seconds elapsed from the time the car passed the corner of the building to the time Officer Bonilla stopped the car and opened his door. Ex. 2 at 00:18-00:22.

[3] Testing confirmed the contents to be one bag of methamphetamine, two bags of fentanyl, and one bag of mannitol.

1   let you go home, I just saw you with white powder substance in your hand." Ex. 2 at 00:52-01:00.
2   Defendant said "no, no" then "take that shit," referring to the contents of the black bag. *Id.* at 00:57-
3   01:03.
4         After appearing to check defendant's handcuffed hands again, Officer Bonilla told Officer
5   Agoncillo to "watch that bag," pointing to the black bag. Ex. 2 at 01:10-01:19. Officer Bonilla
6   proceeded to examine the ground in the area. *Id.* at 01:20-02:10. As Officer Agoncillo took
7   defendant's information, Officer Bonilla then snapped pictures of defendant and the contents of the
8   black bag, through the open top of the bag, while he held one of the handles to the side. *Id.* at 02:20-
9   02:38. After some back-and-forth to determine defendant's age, Officer Bonilla informed defendant
10  that he was under arrest for possession of narcotics for sale. *Id.* at 03:48-03:55. Defendant reiterated
11  his request that they let him go. *Id.* at 03:55-03:58. Officer Bonilla replied, "I can't let you go man,
12  I just saw you with white powder in your hand and then you have this bag of narcotics, okay?" *Id.*
13  at 03:57-04:03. Defendant responded by again asking the police officers to just "take that shit." *Id.*
14  at 04:03-04:05. The officers later booked the bags of narcotics into evidence and defendant was
15  booked into the county jail. Ex. 136.
16        On August 12, 2024, defendant filed a motion to suppress the evidence seized during this
17  encounter, arguing that the warrantless seizure and search of defendant and his bag violated his
18  Fourth Amendment rights. Dkt. No. 32 ("Mot.").

## LEGAL STANDARD

21        The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. amend.
22  IV. The exclusionary rule—the suppression of evidence taken as a result of an unconstitutional
23  search or seizure—has become the primary way to enforce Fourth Amendment rights. *Utah v.*
24  *Strieff*, 579 U.S. 232, 237 (2016). In general, the Fourth Amendment requires that the government
25  obtain a search warrant, "subject to certain reasonable exceptions." *Kentucky v. King*, 563 U.S. 452,
26  459 (2011). "The government bears the burden of proving that a warrantless search or seizure falls
27  within an exception to the warrant requirement." *United States v. Job*, 871 F.3d 852, 860 (9th Cir.
28  2017) (citations omitted).

Preliminary questions about the admissibility of evidence are determined by the Court applying a preponderance of the evidence standard. Fed. R. Evid. 104; *Bourjaily v. United States*, 483 U.S. 171, 175 (1987).

**DISCUSSION**

Defendant argues that the officers lacked reasonable suspicion to stop him. Mot. at 9-10. Under the standard articulated in *Terry v. Ohio*, 392 U.S. 1, 30 (1968), "the police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *United States v. Sokolow*, 490 U.S. 1, 7 (1989). Reasonable suspicion requires "some minimal level of objective justification," but this level "is considerably less than proof of wrongdoing by a preponderance of the evidence." *Id.* (citations omitted). In assessing whether an officer has a reasonable suspicion, courts "must consider the totality of the circumstances—the whole picture." *Id.* (internal quotation marks and citation omitted).

The government asserts that Officer Bonilla had reasonable suspicion to stop defendant when he saw defendant holding a bag of white powder in an area known for drug trafficking. Dkt. No. 44 ("Opp'n") at 6-7. Defendant challenges Officer Bonilla's assertion that he saw defendant holding a bag of white powder from his police car in the short time he rounded the corner of 7th Street and Stevenson Street on the wrong side of the street. Defendant testified that he was only holding the black bag and was not holding up visible narcotics or a bag of white powder. He testified that he knew the police car was approaching and that, since he was only with his friends, he had no reason to be holding up visible narcotics. Hearing Transcript at 98-103. If the Court accepts defendant's testimony, it must conclude either that Officer Bonilla lied about seeing the bag of white powder or that he thought he saw a bag, but was mistaken.

After considering the evidence, the Court finds that Officer Bonilla may have believed he saw a bag of white powder but was in fact mistaken. Officer Bonilla testified that he turned onto 7th Street from Market Street because he saw, a block away, "a group of individuals congregating in the area of Stevenson Street." Hearing Transcript at 17. A few moments later he said, "as I

4

1  passed the corner line at Seventh and Stevenson, I observed a group of individuals congregating in
2  that area." *Id.* at 18. On cross-examination, Officer Bonilla reiterated he did not see defendant until
3  he passed the building line. *Id.* at 52; Ex. 168A. He also testified that the other people he saw were
4  in "close proximity" to defendant. Hearing Transcript at 52. If the others were in close proximity
5  to defendant, well around the corner, the officers would not have been able to see that group before
6  initiating their first turn from Market Street onto 7th Street. Street view photographs admitted into
7  evidence and the BWC footage make Officer Bonilla's rationale for the initial turn questionable as
8  a physical matter. The BWC footage shows Officer Bonilla preparing to turn onto 7th Street before
9  being able to see the corner of 7th and Stevenson Streets, and commencing the turn almost
10  instantaneously as that corner comes into the driver's view. Ex. 2 at 00:00-00:10. Simply put, the
11  evidence suggests a more plausible explanation: the officers' maneuver down 7th Street was a
12  deliberate attempt in an area known for drug dealing to catch people by surprise.[4] The officers had
13  made drug arrests in the vicinity of 7th and Stevenson Streets before. Hearing Transcript at 17.
14  Officer Bonilla likely anticipated seeing narcotics activity when he turned the corner and this
15  anticipation may have affected his perception.

16  Officer Bonilla testified that defendant was only holding a black bag when he got out of the
17  police car and approached defendant on the sidewalk. Hearing Transcript at 24. The BWC footage
18  shows that when Officer Bonilla hand-cuffed defendant immediately after he stopped him,
19  defendant was not holding any bag of white powder. Ex. 2 at 00:24-00:46. Indeed, defendant
20  testified that he had been warned by a compatriot that the police were approaching down Seventh
21  Street, out of defendant's line-of-sight. Hearing Transcript at 102-03. Defendant's testimony
22  regarding the encounter—including that he was not openly showing a bag of white powder—was
23  coherent, logical, and not contradicted by the BWC footage. *See id.* at 98-105. Defendant did not
24  deny that he was in the area to sell drugs and only contests that he was not holding out a bag of
25  drugs at that specific time because he was with friends, not customers. *Id.* at 98-99, 103. Although

---

[4] This maneuver would have been appropriate but for the direction of the one-way street. San Francisco Police Department policy states that officers shall "observe all traffic laws and regulations" when responding to a non-emergency. Ex. 135 at 2.

recognizing that defendant has a clear motivation to lie, the Court considers defendant's testimony to be credible. The Court finds defendant was not openly displaying a bag of white powder when the officers rounded the corner, although, in the excitement of the moment, Officer Bonilla may have believed otherwise.[5]

While a mistake of law negates reasonable suspicion, an officer can sometimes rely on a mistake of fact. *United States v. Mariscal*, 285 F.3d 1127, 1131 (9th Cir. 2002). The mistake of fact must be reasonable and made in good faith. *See Hill v. California*, 401 U.S. 797, 803-05 (1971) (allowing evidence taken pursuant to an arrest when the arrest was not of the intended suspect, but someone mistaken to be him); *see also United States v. Dorais*, 241 F.3d 1124, 1131 (9th Cir. 2001) (holding officers had reasonable suspicion to stop a rental car when they reasonably but mistakenly thought the car had been overdue long enough to constitute a misdemeanor).

At the motion hearing on November 22, 2024, defendant argued that Officer Bonilla's belief that he saw a small bag with white powder was unreasonable based on the circumstances of the encounter. Officer Bonilla could only see defendant for a few seconds, at the same time as he navigated his patrol car the wrong way down a one-way street, then turned and quickly stopped the car. Ex. 2 at 00:18-00:22. When defendant entered Officer Bonilla's line of sight, they were likely separated by more than ten feet and defendant was standing with a group of individuals. Hearing Transcript at 18, 69; Ex. 168A (showing where the officer remembered defendant to be standing). And Officer Bonilla did not confirm what he saw with his partner before exiting the vehicle, at least to the extent that Officer Agoncillo could remember. Hearing Transcript at 93.

The government maintained that Officer Bonilla correctly observed the bag of white powder, but argued alternatively that if, he was mistaken, the mistake was reasonable in light of the context of the encounter. Officer Bonilla had previously made narcotics arrests in the area of 7th Street where the stop occurred. Hearing Transcript at 11-12. In May 2024, drug dealing in this area was more common in the late-night and early morning hours. *Id.* at 12. And when the officers

---

[5] The BWC footage shows Officer Bonilla checking defendant's (empty) hands closely after handcuffing, and then searching the sidewalks around the stop site with his powerful flashlight, apparently searching for a bag of white powder. Ex. 2 at 01:10-02:10.

1    approached the group, they quickly dispersed. *Id.* at 22.

2    Under these circumstances, and assuming that Officer Bonilla acted in good faith, the
3    relevant inquiry is whether it was reasonable for him to act on what he thought he saw, when—as
4    the Court finds—he did not actually see it. The case law is sparse. Many mistake of fact cases
5    involve officers appropriately relying on inaccurate reports by third parties, a different set of
6    circumstances than those presented here. *See, e.g., United States v. Garcia-Acuna*, 175 F. 3d 1143,
7    1146-47 (9th Cir. 1999), *as amended on denial of rehearing* (July 19, 1999). Two of the most
8    closely analogous cases come from the Eighth Circuit and reach opposite conclusions. In *United*
9    *States v. Barnum*, an officer stopped a car after seeing it in an area known for drug and prostitution
10   activity. 564 F.3d 964, 967 (8th Cir. 2009). The officer claimed to spot a malfunctioning center
11   taillight, but the car's inspection records from before and after the stop did not highlight any issues
12   with the lights. *Id.* at 968. The court therefore assumed the officer's purported observation was
13   mistaken and determined it to be an objectively unreasonable mistake.[6] *Id.* at 973. In *Lawyer v.*
14   *City of Council Bluffs*, an officer thought he saw a marijuana pipe in a pouch during a traffic stop,
15   but a search revealed there was no pipe. 361 F.3d 1099, 1104 (8th Cir. 2004). The court determined
16   the search was reasonable based on what the officer thought he saw. *Id.* However, the court there
17   was considering the officer's defense of qualified immunity in a civil suit. *Id.* at 1103. The
18   reasonable mistake inquiry is more forgiving of an officer's mistake—in other words, more officer-
19   friendly—in the qualified immunity context than in the reasonable suspicion or probable cause
20   context. *Heien v. North Carolina*, 574 U.S. 54, 66-67 (2014); *see also United States v. Longoria*,
21   183 F. Supp. 3d 1164, 1181 (N.D. Fla. 2016) (analyzing *Heien*).[7] Further, the individuals pressing
22   the case in *Lawyer* did not contest the fact that the officer thought he saw a pipe or that the mistake
23   was unreasonable. *See* 361 F.3d at 1104.

---

[6] The question for the court in *Barnum* was whether the mistake was so "purposeful or flagrant" as to negate a subsequent consent to search and the court ultimately determined the consent remained valid. 564 F.3d at 973.

[7] A recent Ninth Circuit decision held officers were reasonably mistaken when they mistook "a plastic toy fashioned to appear as a blade" for an actual weapon, but that case was in the more officer-friendly qualified immunity context. *Napouk v. Las Vegas Metro. Police Dep't*, No. 23-15726, 2024 WL 5051193, at *3-5 (9th Cir. Dec. 10, 2024).

The Court also draws some similarities between the present case and *United States v. Morse*, No. 07-CR-279, 2008 WL 1751382, at *5 (E.D. Wis. Apr. 11, 2008), where the court weighed competing testimony between two police officers and a driver about whether the driver ran a red light prior to the officers' stop of the car and arrest of a passenger. The court concluded the driver was equally credible and the government had not met its burden in proving the car ran a red light. *Id.* Since the driver had seen the police car make a u-turn to follow him, the court reasoned that "it defies logic that [the driver] would disregard a traffic light at a large and well-controlled intersection." *Id.* The court further concluded that if the officers were mistaken about having seen the car run the red light, this was an unreasonable mistake. *Id.* at *6. The court thus granted a motion to suppress evidence obtained against the passenger in the subsequent stop. *Id.* at *7.

While this case presents a close question, after having held the relatively lengthy evidentiary hearing the Court concludes the government has not met its burden to prove that Officer Bonilla's mistake was reasonable. "Well-settled principles guide the fact-finding process, including the rule that when the scales are evenly balanced and the relevant evidence leaves a trier of fact in 'equipoise,' the party with the burden of proof loses." *Simmons v. Blodgett*, 110 F.3d 39, 42 (9th Cir. 1997), as amended (Apr. 18, 1997). To be sure, the context of the encounter matters. *See United States v. Terxidor*, No. 23-652, 2024 WL 3250381 at *2 (9th Cir. July 1, 2024) (holding that encountering a vehicle in the "especially crime-heavy portion of the Tenderloin" contributed to reasonable suspicion). But unlike many mistakes of fact deemed reasonable when officers rely on incorrect reports from a normally trustworthy third party, here Officer Bonilla "made the mistake himself", *see United States v. Odom*, 588 F. Supp. 3d 1032, 1045-46 (N.D. Cal. 2022) (holding an officer's mistaken interpretation of a defendant's explanation was unreasonable). As the Ninth Circuit has stated in a case involving an officer's mistake of law, "The chimera created by [the officer's] imaginings cannot be used against the [defendant]." *Mariscal*, 285 F.3d at 1130. The same holds true when an officer makes a mistake of fact. *See Liberal v. Estrada*, 632 F.3d 1064, 1078 (9th Cir. 2011), *abrogated on other grounds by Hampton v. California*, 83 F.4th 754 (9th Cir. 2023). If Officer Bonilla thought he saw defendant holding a small clear bag with white powder, he was unreasonably mistaken.

1  As a result, the officers did not have reasonable suspicion to stop defendant. "The exclusionary rule generally applied in Fourth Amendment cases requires courts to suppress any evidence obtained as a direct result of an illegal search or seizure, as well as evidence later discovered and found to be derivative of an illegality, the so-called fruit of the poisonous tree." *United States v. Ngumezi*, 980 F.3d 1285, 1290 (9th Cir. 2020) (quoting *Utah v. Strieff*, 579 U.S. at 237 (internal quotation marks omitted)). The evidence discovered as a result of the unconstitutional detention of defendant—namely the narcotics and scales in the black bag—must be suppressed.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendant's motion to suppress the evidence obtained against defendant by San Francisco Police Department officers on May 10, 2024.

**IT IS SO ORDERED**.

Dated: December 18, 2024

SUSAN ILLSTON
United States District Judge